## Case No. 3,479.

CUNNINGHAM et al. v. BELL et al.

[5 Mason, 161.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1828.[2]

BREACH OF ORDERS BY CONSIGNEE — LIABILITY— DAMAGES—RATIFICATION.

1. Where a voyage was undertaken to Havana, and thence to Leghorn and back, and the owners ordered the consignees at Leghorn, to apply their funds, estimated at 4600 pezzos, to the purchase first of 2200 pezzos value of tiles, and the residue to invest in paper; and the consignees accepting the orders, invested the whole funds in paper, because they fell short of the estimated sum, although a sum of 1750 pezzos might have been so invested; it was *held*, that the consignees were liable in damages for the breach of orders.
   [See note at end of case.]

2. The damages, in such case, are not to be confined to the transactions at Leghorn; but are to be calculated upon the actual injury to the plaintiffs, in the events of the voyage, taking into consideration the markets at Havana, and all the other circumstances.
   [Cited in Heinemann v. Heard, 50 N. Y. 37.]
   [See note at end of case.]

3. The receipt of the proceeds of the paper after sale, by the master at Havana, is not, in point of law, per se, a ratification of the purchase, and investment in paper by the owners.
   [See note at end of case.]

4. What circumstances amount to a ratification of a breach of orders. The omission to answer a letter acknowledging the breach of orders, or the omission to state to the party in a letter of complaint, that he will be held responsible, is not, per se, a ratification; but the question is open to the jury, as a matter of fact, whether such ratification ought under all the circumstances, to be presumed.
   [Cited in Perkins v. Currier, Case No. 10,- 985.]
   [See note at end of case.]

5. Where a bill of exceptions is taken at the trial, a motion for a new trial will not be entertained, unless the bill of exceptions is waived.
   [Cited in Marine City Stave Co. v. Herreshoff Manuf'g Co., 32 Fed. 824. Limited in Preble v. Bates, 37 Fed. 773.]

Assumpsit brought by the plaintiffs ]John A. Cunningham and William J. Loring], who are merchants in Boston, Massachusetts, against the defendants [James C. Bell and others], who are merchants in Leghorn, in Tuscany, for breach of orders as factors and commission merchants. The declaration contained various counts. Plea, the general issue. The material facts as they appeared at the trial, upon the points of law in controversy, are summed up in the charge of the court; and it is thought unnecessary to report them, or give them more in detail.

Hubbard & Webster, for plaintiffs.
William Sullivan, for defendants.

[1] [Reported by William P. Mason, Esq.]
[2] [Affirmed in Bell v. Cunningham, 3 Pet. (28 U. S.) 69.]

STORY, Circuit Justice, in summing up to the jury stated as follows: The present action is brought to recover damages for a supposed breach of orders, in a commercial transaction undertaken by the defendants at the request of the plaintiffs. The plaintiffs having planned a voyage from Boston to Havana, and thence to Leghorn and back to Havana, for the brig Halcyon, commanded by Captain Skinner, on the 15th of September, 1824, wrote a letter addressed to the defendants at Leghorn of the following purport: "Boston, September 15, 1824. Duplicate. Messrs. Bell, De Yang & Co.—Gent'n: This will be handed to you by Capt. J. Skinner, Jr., master of the brig Halcyon, belonging to us. We have contracted with Messrs. Atkinson & Robbins of this place, to furnish 600 boxes from Havana to Leghorn, on freight of £4. 10s. and 5 per cent. primage, payable in a bill on London, or in Leghorn currency, at the option of the master, and 600 boxes on half profits for freight, 1000 pezzos to be paid in Leghorn, on account of said profits. As the goods are to be consigned to you, we mention the terms of the contract, to avoid misunderstanding. The whole amount of freight receivable at Leghorn will be about pezzos 4600. Please invest 2200 pezzos in marble tiles, of 12, 14, and 16 ounces; the whiter they are the better. We believe, but are not certain, that the oz. corresponds to the English inch. We annex a copy of our invoice, received by Loring, Cunningham & Co. in 1818-19. The balance, after paying disbursements, please invest in wrapping paper, to cost from 35 to 50 pezzos per 100 reams. Captain Skinner is to return to Havana from Leghorn. We wish you to obtain for him some freight, if possible, (excepting tiles and wrapping paper,) with liberty to touch at Marseilles, should letters we have requested Messrs. T. H. Rogers & Co. to lodge with you, induce him to stop there on his return. With much respect," &c. After annexing the invoice, there was a postscript as follows: "September 20, 1824. The above is duplicate of our respects per Halcyon. Please forward the enclosed as soon as received. We send the above, that if time is necessary to furnish the articles therein ordered, you may receive it before the arrival of the Halcyon." The original letter, without this postscript, was sent by the Halcyon, with the following postscript on it: "P. S. We have further engaged whatever may be necessary to fill the brig, on half profits, on account of which 700 pezzos are to be paid in Leghorn. After purchasing the tiles and paying disbursements, you will invest the balance in paper as abovementioned. In previous orders, the reams have been deficient in the proper number of sheets. We will thank you to pay particular attention to this, as well as having all the sheets entire." The foregoing duplicate, with the postscript of the 20th of September was received by the defendants on the 30th of No-

vember following, who on the 9th of December following, replied as follows:—"The order you are pleased to give us for paper and marble tiles, to be paid for out of the freight of the Halcyon's cargo from Havana, to our consignment, has our particular attention. You have done very right to send us this order, as the wrapping paper cannot be got in readiness before the end of January; and therefore, had it been delayed longer, could not have been in time for your brig Halcyon. We have contracted for 5000 reams, at as near your limits as possible, the article being just now in great demand. The tile shall be collected also; and for your future regulation we will note at foot a scale of comparative measurement 'twixt ounces and English inches." It is material to remark, that nothing is here said as to the price, at which the tiles were contracted for, so as to put the plaintiffs in possession of the exact sum.

The Halcyon sailed from Boston for the Havana on the 16th of October, and having performed that part of the voyage, and taken in a cargo of 1330 boxes of sugar for Leghorn, arrived at the latter port on the 20th of January, 1825, and there the cargo was delivered to, and sold by the defendants, who received the proceeds of the same. From the state of the market the funds realized for the plaintiffs fell short of the expected amount of 4600 pezzos, the net amount of freight, including the advance of the 1000 pezzos provided for by the original contract, being, as appears by the account current, only about 3450 pezzos. The disbursements of the brig amounted to 647 pezzos. No tiles were purchased: and no investment at all was made of the 700 pezzos provided for in the postscript; but the whole of the other proceeds, deducting the disbursements, viz. 2801 pezzos, were invested in 437 packages of wrapping paper and sent in the Halcyon to the Havana. After the arrival at the Havana, the paper was sold and the proceeds received by the plaintiffs. The tiles would have been a far more profitable investment. These are the facts, upon which the plaintiffs have founded their action for damages for a breach of orders, in not investing 2200 pezzos in tiles, as required by the original letters of the 15th and 20th of September.

The first question arising in the case is, as to the nature and extent of the contract between the parties; for there can be no doubt, that the orders of the plaintiffs, and the acceptance thereof by the defendants, constituted a valid contract upon commission, binding between the parties. It appears to me, that there was a clear undertaking on the part of the defendants to apply the proceeds of the freight, and advances coming into their hands from the cargo of the Halcyon, in the manner pointed out in the orders. I mean, that in the first place, the defendants were to appropriate 2200 pezzos to the purchase of marble tile, and the balance, after deducting the disbursements of the brig, and

the balance only, was to be applied to the purchase of wrapping paper. I agree, that the defendants were not bound to execute the orders, unless funds came to their hands; for they did not stipulate to make any advances out of their own monies. But on the other hand, there was no stipulation, that 4600 pezzos should at all events come into their hands, constituting a condition precedent, so that if a less sum should come, the defendants were at liberty totally to disregard the orders of the plaintiffs. The reasonable interpretation of the orders is, that the funds received on account of the plaintiffs should, as far as they would go, be applied to the purchase, first, of marble tiles, and afterwards, if any balance remained, pro tanto, of wrapping paper. If, therefore, the whole funds should be absorbed by a purchase of marble tiles, to the extent of 2200 pezzos, there was to be no investment in paper.

The estimate of the probable amount of the freight and advances at 4600 pezzos was undoubtedly designed to direct the discretion of the defendants in the purchase of paper. They had a right to act with reference to that, as the probable funds, which would be realized. If it were necessary in order to secure the paper ready for the return voyage at the proper period, that a preliminary contract should be made with dealers in that article, the defendants were at liberty so to do, and were not obliged to wait the ship's arrival, before they took a step. They were, in this respect, authorized to do whatever the custom of trade, or sound discretion might require, to accomplish the objects of the plaintiffs. And their acts, so done, were obligatory upon the plaintiffs, whether funds afterwards came into their hands or not. It is clear, from the subsequent correspondence, that the parties so understood the matter. When, therefore, the defendants received the orders of the plaintiffs, they had a right to act upon the presumption of receiving funds to the amount of 4600 pezzos. They were then to consider 2200 pezzos of this sum appropriated to the purchase of tiles. They were to make a deduction of the probable amount of disbursements, which might fairly be calculated at the sum ultimately paid, say 650 pezzos; and they had a right to contract for paper to the amount of the balance remaining of the 4600 pezzos, say to the amount of 1750 pezzos. If they had so done, they would in every event have been justified; and if no more funds had come into their hands than would have paid for the paper so contracted for, and the disbursements, they would have been exonerated from all responsibility for not making any investment in tiles. And if a balance, less than 2200 pezzos had remained, they would have been bound to apply that balance only to an investment in tiles. This is stated upon the presumption, that it was necessary to make a contract for the paper before

the arrival of the brig; and that such a contract could not be reasonably made upon the condition, that the paper should be wanted; but, for the interest of the plaintiffs, must be absolute. For if such contingent purchase of the paper could have been securely contracted for, it was the clear duty of the defendants so to have contracted, and not to run the hazard of defeating the primary object of the plaintiffs in the purchase of tiles. In point of fact, the defendants did purchase paper to the amount of 2801 pezzos, and thus exceeded the orders by the difference between that sum and 1750 pezzos, which was the utmost presumable balance applicable to the purchase of paper. That difference is 1051 pezzos, which might at all events have been invested in tiles.

In order to meet this state of the facts, the defendants contend in the first place, that in their letter of the 9th of December, they communicated to the plaintiffs, that they had purchased 5000 reams of paper for them; and that the plaintiffs ratified the purchase. Let us see, how that statement is borne out by the facts. The defendants, on the 14th of January 1825, wrote a letter to the plaintiffs stating:—"The wrapping paper ordered by yours of the 15th of September will be in readiness by the end of this month, and we shall have by that time ready to ship, 10,000 marble tiles of 12 ounces, 7600 do. of 14 ounces, and 6200 do. of 16 ounces, which will be about the investment you desire of the freight from the Halcyon." This letter, it is to be recollected, was written before the arrival of the Halcyon. The plaintiffs, on the 7th of March, answered this letter; and though they had doubtless received the preceding letter of the 9th of December, no direct reference is made to it. The plaintiffs say, "We have received your much esteemed favour of the 14th of January, and are gratified with the investment you have directed of the freight for the Halcyon." It may be assumed, that the plaintiffs, when they wrote this letter, knew that 5000 reams of paper had been purchased on their account by the defendants. But as no price was mentioned, it is impossible for them to ascertain, that this was beyond the amount authorized by their orders. The defendants did not give them any information, that it was a deviation from their orders; and the language of the letter of the 14th of January shows, that the defendants contemplated no deviation; for they say, that they shall have the tiles in readiness to ship to the amount of the investment desired by the plaintiffs. So plaintiffs must have understood them; and if their letter of the 7th of March is a ratification of the act of the defendants in the purchase of the paper, it can be deemed so, only as made in compliance with their orders, unless some information of a deviation is brought home to them. No evidence is of-

fered for this purpose, except what arises from the letter itself; and in it I can find no such information. However this, as a question of fact, will be left to the jury. But I am of opinion, that the funds received under the original contract of shipment were not only to be applied to the purchases directed by the plaintiffs, but that the additional 700 pezzos advance, notified in the postscript of the letters of the 15th and 20th of September, which came by the Halcyon, were also to be applied by the defendants as supplemental funds to the same purpose. The object of that postscript was, not to change the original orders for purchases; but to confirm them, and authorize and require the investment of the additional 700 pezzos in pursuance of them. Why it was not done by the defendants is not explained, otherwise than by the defendants' statement, that there were ultimately no half profits on the sale. But I understand, that the 700 pezzos were to be a preliminary advance before the sale, and not to await the event. If there should be no half profits, this advance would be reimbursable by the plaintiffs. The vessel was not to wait for a sale. As to this additional advance, then, the case, as to the non-investment, must stand upon the same ground, as the original funds. Unless, then, there has been a ratification by the plaintiffs of the purchase of the 5000 reams of paper, at the actual price paid, with a full knowledge of the facts, the ground of defence, to which I have referred, fails. And if there was such a ratification, it does not exonerate the defendants from liability for the non-investment of the funds not covered by the purchase of the 5000 reams of paper.

It is in the next place contended by the defendants, that the 5000 reams of paper having been received on board the Halcyon, and carried to the Havana, and sold there on the plaintiffs' account, that receipt and sale amount, in law, to a ratification of the purchase of the paper, and also of the actual application of the whole funds by the defendants at Leghorn. I am not prepared to admit, that the facts stated do, per se, in point of law, amount to such a ratification. Whether there has been such a ratification is matter of fact for the consideration of the jury under all the circumstances of the case. It is not sufficient, that the paper was carried to the Havana, and there sold by the master on account of the plaintiffs; for that might have been done, and indeed seems to have been done by him, in the ordinary course of his employment in the voyage, without any communication with the owners. And, surely, they could not be bound by his acts in a case of this nature, if they had no knowledge of any actual or intentional deviation from their orders in the shipment, at the time of the sale. The mere receipt of the proceeds after the sale is not decisive. And, indeed, the jury must decide from all the circumstances, whether the plaintiffs have, in any manner, ratified the proceedings of the defendants. If they have, there is an end of the present action.

In the next place, it is contended by the defendants, that the subsequent conduct and proceedings of the plaintiffs amount to a virtual ratification of these transactions. The correspondence between the parties is mainly relied on for this purpose. The letter of the defendants, dated on the 21st of January, 1825, speaks of the arrival of the Halcyon, and then adds, "He (Captain Skinner) has brought samples of marble tiles, and of wrapping paper, &c. We shall compare them with the goods fixed for you, and then act for the best." There is no pretence, that any thing in this letter admonished the plaintiffs of any intended deviation from their orders. The next letter of the defendants is dated on the 21st of February 1825, and after stating, that the Halcyon had sailed yesterday for Marseilles, it adds, "The samples of wrapping paper sent us, &c. we found much inferior to any made in this state, and have executed your order with a much better article, although the difference in price bears no proportion. As your account current, after purchasing the paper, which Captain Skinner told us was the better article for investment, gave only a small balance, we increased a little the quantity of paper, and sent no tiles." And after stating the account current, and amount of the invoice of the paper, &c., it farther adds, "Captain Skinner has been made aware of the superior quality of this parcel of paper, and that each ream is composed correctly of 20 quires of 24, and not 16 sheets, each, as has been occasionally shipped, so that he will no doubt mark an adequate price for it, because, in reality, the prices, at which it is invoiced, are reduced, by this difference, below those mentioned in your order." Here, then, we have the first notice of the omission of the purchase of tiles, and the reason given for it. The paper, (if we are to believe this statement,) considering its extra quality and quantity, is purchased below the plaintiffs' limits. If so, the first error of the defendants was in originally contracting for the purchase of too large a quantity. They purchased to the value of 2801 pezzos, when they were limited to the value of about 1750 pezzos. For this difference no reason is given; except, that it is said, that a small balance only remained in their hands. But if they had purchased only to the extent of the limits of the orders, they would have had 1050 pezzos, beside the advance of the 700 pezzos, equal to 1750 pezzos, to apply to the purchase of the tiles. The plaintiffs, in their reply to this letter, dated the 18th of April, 1825, after quoting their original orders, say, "We are exceedingly disappointed, that such positive directions were not complied with; they were given for sufficient reasons, and without authority to

alter them. You omitted to invest the 700 pezzos on account of the freight of the 150 boxes marked T, which we regret, as we wished the funds at Havana. With this, you would have had 4240 pezzos, which would have furnished the tiles, paid disbursements, and have left 1393 pezzos to be invested in paper." The defendants replied, on the 27th of June, 1825, stating, "We are extremely hurt, that what we did for your account by the Halcyon, in February last, should not have met your approbation, because we acted for the best of our judgment for your interest. Your instructions would have been executed literally, had not the premises, under which they were given, changed. The sum of 700 pezzos, which were to be advanced here on account of half profits of the Halcyon's cargo of sugar, not having been due from a default of profits, we considered ourselves authorized to act with a discretionary power; otherwise, be assured, that we never deviate from orders." This letter was never answered. Now, the question for the jury is, under these circumstances, whether this omission of the plaintiffs to make an express declaration, that they would hold the defendants accountable for the breach of orders, and their subsequent silence and delay in bringing the suit, are to be construed as an implied acquiescence in, or ratification of, the acts of the defendants, or a waiver of the claim of the plaintiffs for damages. If so, then the plaintiffs cannot now, upon any after thoughts, reinstate themselves in any right of action. It is a question of fact, and must be decided by the jury upon the whole evidence. They will take into view the subsequent transactions to explain the delay in bringing the suit; and draw their conclusions accordingly. (The judge here commented on these transactions.)

If the jury shall be of opinion from the whole evidence, that the orders of the plaintiffs have been broken, in not purchasing the tiles, in the manner stated in the declaration, and that there has been no subsequent ratification by the plaintiffs, of the acts and proceedings of the defendants, then the plaintiffs are entitled to recover, and the remaining question is, as to the amount of damages. The counsel for the defendants contend, that the plaintiffs have suffered no damages; that the 2200 pezzos were actually invested in paper on the plaintiffs' account, and were thus received by the plaintiffs at Leghorn, and therefore he has lost nothing; and that, at all events, the measure of damages is the value of the 2200 pezzos at Leghorn, and not at the Havana. My opinion is, that no certain rule of damages can be laid to govern all cases of this nature. The plaintiffs are entitled to recover (if any thing) the real damages sustained by them. What those damages are the jury must decide upon all the circumstances of the case. In estimating them, they are not bound to confine themselves to the state of things at Leghorn, and are not precluded from taking into consideration the nature of the return voyage to the Havana, the safe arrival of the Halcyon at that port, the state of the markets, and the profits, which might have been made by the plaintiffs, if their orders as to the tiles had been complied with. I can lay down no other rule for the government of the jury than this, that they are at liberty to compensate the plaintiffs for their actual damages sustained as a consequence from the default of the defendants; but they are not at liberty to give vindictive damages. They of course will deduct any benefit derived by the plaintiffs from the investment in paper, as an offset in the damages.

At the close of the case, I have been called upon to give certain directions to the jury, which are so very complicated, that I am not quite sure, that I exactly comprehend them. If I do, they are, with a single exception, embraced in the preceding remarks. That exception is, as to supposed variances between the declaration and proofs. So far as those variances depend upon the parol proofs in the cause, it is no part of my duty to decide upon them, for they are matters of fact for the consideration of the jury. The question of a variance between a paper declared on, and that offered in proof, is matter of law; but whether the proofs generally in the case support the declaration, especially when there are parol proofs on both sides, is matter of fact for the jury.

It is contended, by the defendants' counsel, that the first new count in the declaration contains a material variance from the written proofs, because that count sets forth the letter of the 15th of September, 1824, as containing the special contract between the plaintiffs and the defendants, and as the postscript to that letter contains a material part of the contract, and this postscript is not set forth in that count, as a part of the letter, but is wholly omitted, that the evidence offered by the plaintiffs in this behalf does not support, and prove the contract, as in that count is alleged. I have not, at this moment, an opportunity to compare the count closely with the letter, and therefore I may mistake its exact import. But as I understand the postscript of the letter, there is no variance, in point of law, between the contract set forth, and the written evidence in the case. The postscript does not change the nature of the contract; but only shows, that 700 additional pezzos are applicable, as an advance, to the purchase. But the point is rather a matter of fact for the jury upon the whole evidence, and as such I shall leave it to them. (The judge then gave his answer to the respective questions propounded by the defendants' counsel.)

Verdict for the plaintiffs, $3489.24.

After the verdict, a bill of exceptions was tendered to the court and signed; and a mo-

tion for a new trial was also made by the counsel for the defendants. On its coming on for argument

STORY, Circuit Justice, said,—The motion for a new trial cannot be entertained, according to the practice of the court, unless the bill of exceptions is waived. The party has his election, either to proceed upon a writ of error to the supreme court, in order to have it determined there, whether the points were correctly ruled at the trial; or waiving that remedy, to apply here for a new trial. But he cannot be permitted to proceed both ways. The ground for granting a new trial is, that the party is without other remedy. But that is not the case, where he files a bill of exceptions; for upon that he can take the opinion of the supreme court. It is most convenient for the due administration of justice, that where a party means to apply to the appellate court for a final decision of the law of his case, he should so do with the least delay. The other party ought not to be burthened with the expenses of successive trials, until the law of the case is definitively settled by the final tribunal. Motion overruled.

[NOTE. Defendants sued out a writ of error to the supreme court, where the judgment herein was affirmed. The reasons urged for reversal were alleged erroneous instructions, and the refusal to give certain other instructions to the jury; but the court held, per Chief Justice Marshall, that the trial court erred in neither respect. Bell v. Cunningham, 3 Pet. (28 U. S.) 69. Subsequently defendants filed a bill in equity for relief against the judgment on the ground of surprise, and the court granted a perpetual injunction, restraining the collection of the judgment in so far as related to the damages awarded on account of the noninvestment of the 700 pezzos. Bell v. Cunningham, Case No. 1,246.]